**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| | : | |
| **V.** | : | **CRIMINAL NUMBER 19-057** |
| | : | |
| | : | |
| **JAMES CONNOR, V** | : | |

## DEFENDANT'S SENTENCING MEMORANDUM

James Francis Connor, V, comes before this Court having pled guilty to two counts of manufacturing child pornography in violation of 18 U.S.C. §§ 2251 (a) and (e), one count of use of an interstate commerce facility to entice a minor to engage in sexually explicit conduct in violation of 18 U.S.C. § 2422 (b), one count of transferring obscene material to a minor in violation of 18 U.S.C. § 1470, and one count of possession of child pornography in violation of 18 U.S.C. § 2252(a)(4)(B). Mr. Connor deeply regrets his actions and takes full responsibility for his conduct in this case. After careful negotiations between the government and defense, Mr. Connor has signed a plea agreement pursuant to FED.R.CRIM.PRO. 11(c)(1)(C). The defense respectfully requests that this Court accept the recommended sentence of 300 months' incarceration followed by a minimum five-year term of supervised release, and the other conditions outlined in ¶ 2 of the Guilty Plea Agreement. As argued herein, this recommended sentence is sufficient but not greater than necessary to meet the statutory considerations of 18 U.S.C. § 3553(a) and is therefore appropriate in this case.

## I.      JAMES CONNOR'S PERSONAL HISTORY

Born and raised in West Chester, Pennsylvania, Mr. Connor enjoyed a stable childhood, growing up in a loving, close-knit family. Both he and his parents remember his very early years

with fondness.  He enjoyed spending time with his mother around the house, "helping" her in the kitchen.

Sadly, when Mr. Connor started school, he was exposed to bullying from other children. Mr. Connor was heavy-set as a child, and was ridiculed for his weight.  Indeed, he has struggled with his weight since his childhood.  His mother reports that there were periods of time when, as an early adolescent, he did not want to leave his room or the house if he gained any weight, and he would isolate himself from others.  She recalls that he struggled with relationships with other boys in his school, and was taunted mercilessly from first through sixth grade.  Unlike the other boys in his class, he was not good at – and did not enjoy – athletic activities.  Between his physical awkwardness and feeling overweight, Mr. Connor progressively withdrew into himself, preferring to play his guitar in his room instead of engaging with other children.

His insecurities undoubtedly contributed to his reliance on the internet and online groups to find acceptance, relationships, and "love."  He knows that through his actions, he has caused the victim great trauma.  He knows that he has a lot of work to do as he progresses through sex offender treatment.  The recommended sentence of 300 months' incarceration will allow sufficient time for such rehabilitation.

Mr. Connor has shown a commitment to addressing his underlying mental health issues. He has seen a psychiatrist, met with the doctor at the Federal Detention Center when possible, and is compliant with his prescribed medication regimen of mental health medications.  He is aware that he will need to remain aware of his mental state, and address his depression and bipolarity early when he experiences symptoms, instead of letting his depressive episodes become out of control, which leads him into compulsive behaviors.

Mr. Connor graduated from high school in 2014.  Following high school, he took courses at Delaware County Community College.  He enjoyed going to school as an adult, and is eager to continue his education while incarcerated.  In 2017, Mr. Connor worked at the Shoprite close to his home.  He worked part-time for nearly one-and-a-half years.  He was a good employee, and enjoyed being able to interact with customers.  He has always shown a commitment to work, and a desire to contribute to his family.  Before his prior arrest, he worked at his local Rite Aid Pharmacy.  Before that, he worked for more than one year at a Giant supermarket.  His work history will allow him to find employment more easily when he is finally released.

While awaiting sentencing in this case, Mr. Connor has grown, both emotionally and spiritually.  He has dedicated a great deal of time to studying the Bible, and notes that over the past several months he has gained a greater sense of empathy for the victim.  As he stated during the form 1 interview on August 21, 2019, "I can't imagine what the victim is going through."  He has taken countless correspondence classes in Bible study, and consistently avails himself of any prison ministry outreach possible.  His numerous certificates are attached here as Exhibit A.

In addition to his religious studies, Mr. Connor has taken advantage of educational and vocational opportunities offered at the FDC, so that he can be financially independent when he is ultimately released from prison.  He has taken classes in commercial driving, real estate, and money management.  (See Exhibit B.)  He looks forward to exploring additional educational opportunities after he is sentenced.

## II.  THE RECOMMENDED SENTENCING GUIDELINE RANGE

United States Probation Officer Christopher Boyer correctly calculates the appropriate sentencing guideline range as life imprisonment, based on a total offense level of 43 and a Criminal History Category of II.   The mandatory minimum term of imprisonment is 180

months.  As such, the recommended sentence of 300 months' incarceration is well above the

mandatory minimum, but affords Mr. Connor the possibility of release just before he turn 50

years old.

### III.   STATUTORY FACTORS MILITATE IN SUPPORT OF THE RECOMMENDED SENTENCE OF TWENTY-FIVE YEARS

#### A. Application of the 3553(a) factors to Mr. Connor' case

*1. The nature and circumstances of the offense and the history and characteristics of the defendant.*

The nature of this offense is undoubtedly serious.  Mr. Connor is ashamed and deeply

regretful for his conduct in this case.  He understands that his actions of manufacturing and

possessing child pornography perpetuates the sexual and physical abuse of children.  Mr. Connor

accepts responsibility.  He recognizes how very fortunate he is for the support of his family,

despite the nature of his conduct.  He understands that many individuals in his situation do not

have family who will support him throughout long period of incarceration, especially for charges

involving child pornography.  This support will help Mr. Connor make productive use of his

time while incarcerated and aid in his reentry to the community upon completion of his sentence.

*2. To reflect the seriousness of the offense, to promote respect for the law, and provide just punishment for the offense.*

James Connor, V, is now faced with spending many years in a federal correctional

facility.  He is painfully aware of the impact this will have not only on himself, but also on his

family.  This entire process has reinforced Mr. Connor's respect for the law.  He understands that

his own actions have led to his being separated from his family.  Under the circumstances set

forth in this memorandum, the recommended sentence of 300 months, followed by a minimum

of five years' supervised release and ongoing compliance with SORNA, will provide just

punishment for this offense.

3.  *To afford adequate deterrence to criminal conduct and to protect the public from further crimes of the defendant.*

The mandatory sentences under 18 U.S.C. § 2251(e) provide potent general and specific deterrence to committing this type of offense.   Mr. Connor is only 24 years old.  With a sentence of 25 years' incarceration, Mr. Connor will spend more years of his life inside a federal prison than he has spent outside so far.   He will then be under the Court's supervision for a minimum of five years and must comply with all conditions set forth in the plea agreement.  In addition to compliance before this Court, Mr. Connor will face state criminal charges if he fails to comply with Pennsylvania Megan's Law requirements.  His ongoing obligations under SORNA and the risk of multi-jurisdiction prosecution will deter Mr. Connor from committing future crimes.

4.  *To provide the defendant with needed educational or vocational training, medical care, or other correction al treatment in the most effective manner.*

Fortunately, Mr. Connor has no serious physical health issues for consideration when imposing a sentence. He is committed to addressing his psychiatric needs promptly, instead of letting them take control of his life.  He understands the value of attending therapy and counselling.  Mr. Connor's conduct while awaiting resolution of this case is testament to his commitment to better himself while serving the sentence for this case.

**B.  Kinds of Sentences Available**

The range of sentences statutorily available to this Court is listed in Part D of the PSR.

**C.  The Sentencing Range Established by the Sentencing Commission**

Again, the recommended guideline range yielded by application of U.S.S.G. § 5G1.2(b) is life.  The recommended sentence of 300 months is less than that range, but is far greater than the mandatory minimum sentence.  The recommended sentence takes into account the fact that Mr. Connor has accepted responsibility and pled guilty, as well as the important considerations

required by 3553(a).

**D.  The Need to Avoid Unwanted Disparities**

This Court must consider the "need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6).  Whether any difference among sentences is warranted or unwarranted depends on the individual circumstances of each case and their relationship to the purposes of sentencing. "Unwarranted disparity is defined as different treatment of individual offenders who are similar in relevant ways, or similar treatment of individual offenders who differ in characteristics that are relevant to the purposes of sentencing." U.S. Sent'g Comm'n, *Fifteen Years of Guidelines Sentencing: An Assessment of How Well the Federal Criminal Justice System Is Achieving the Goals of Sentencing Reform 113* (2004).

## IV.   <u>CONCLUSION</u>

For all the reasons cited herein, as well as any which may become apparent to the Court at the sentencing hearing, the defense respectfully requests the Court accept the plea agreement and impose a sentence of 300 months' incarceration.

Respectfully submitted,


*/s/ Mythri Jayaraman*
Mythri Jayaraman
Assistant Federal Defender

## <u>CERTIFICATE OF SERVICE</u>

I, Mythri Jayaraman, Assistant Federal Defender, Federal Community Defender Office

for the Eastern District of Pennsylvania, hereby certify that I have served a copy of the

Defendant's Sentencing Memorandum upon Michelle Rotella, Assistant United States Attorney,

by delivery to her office located at 615 Chestnut Street, Suite 1250, Philadelphia, Pennsylvania

19106.


<u>/s/ Mythri Jayaraman</u>
Mythri Jayaraman
Assistant Federal Defender


DATE:          February 3, 2020